# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39352 (reh)**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Milford C. SCOTT**
Captain (O-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 18 November 2021

————————————

*Military Judge:* Andrew R. Norton.

*Approved sentence:* Dismissal, confinement for 2 months, and a reprimand. Sentence adjudged on 28 January 2020 by GCM convened at Davis-Monthan Air Force Base, Arizona.

*For Appellant:* Major David A. Schiavone, USAF; Captain Ryan S. Crnkovich, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, POSCH, and MEGINLEY, *Appellate Military Judges*.

Senior Judge POSCH delivered the opinion of the court, in which Chief Judge JOHNSON and Judge MEGINLEY joined. Judge MEGINLEY filed a separate concurring opinion.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

POSCH, Senior Judge:

Appellant's case is before this court a second time. At Appellant's trial in June 2017, a general court-martial composed of officer members convicted Appellant, contrary to his pleas, of three specifications of assault consummated by a battery and one specification of fraternization in violation of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 934, respectively.[1] The adjudged and approved sentence consisted of a dismissal and confinement for eight months.

Upon initial review, this court found the assault consummated by a battery convictions both legally and factually sufficient. *United States v. Scott*, No. ACM 39352, 2019 CCA LEXIS 232, at *5–11 (A.F. Ct. Crim. App. 10 May 2019) (unpub. op.). At trial, those offenses were enumerated as Specifications 1, 2, and 3 of Charge I.[2] At the same time, this court set aside the fraternization conviction and the sentence, and dismissed the fraternization charge and specification with prejudice. *Id*. at *2, *24. In the exercise of this court's authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), we authorized a rehearing on sentence. *Scott*, unpub. op. at *24–25 (citing Article 66(e), UCMJ, 10 U.S.C. § 866(e)). At the rehearing that was held in January 2020, a military judge sentenced Appellant to a dismissal, confinement for two months, and a reprimand. The convening authority approved the sentence that was adjudged at the rehearing.[3]

After the rehearing and in this appeal, Appellant raises ten issues, seven of which are assignments of error raised through appellate counsel: (1) whether Appellant is entitled to new post-trial processing because the staff judge advocate's recommendation (SJAR) failed to advise that the convening authority was empowered to set aside Appellant's reprimand; (2) whether Appellant was prejudiced during post-trial processing when the convening authority was provided a personal data sheet containing evidence of nonjudicial punishment

---

[1] Except where indicated, all references in this opinion to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence are to the *Manual for Courts-Martial*, *United States* (2016 ed.).

[2] For each of the three specifications of assault consummated by a battery, Appellant was found not guilty of the excepted word "fist" (as in "strike in the face with his fist"), but guilty of the substituted word "hand." *United States v. Scott*, No. ACM 39352, 2019 CCA LEXIS 232, at *1 n.1 (A.F. Ct. Crim. App. 10 May 2019) (unpub. op.).

[3] The military judge ordered one day of pretrial confinement credit against the term of confinement. At action, the convening authority directed Appellant to "be credited with confinement served under the sentence adjudged at the former trial against the current sentence to confinement."

(NJP) that was ruled inadmissible, and Appellant was not notified of the convening authority's intent to consider adverse matters not admitted at trial as required by Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 13.21 (18 Jan. 2018); (3) in the event that this court does not remand for new post-trial processing, whether the reprimand should be set aside consistent with Articles 63 and 66, UCMJ, 10 U.S.C. §§ 863, 866; (4) whether Appellant is entitled to relief under Article 66, UCMJ, 10 U.S.C. § 866, because he was an undisputed victim of a crime committed by an active duty security forces confinement guard; (5) whether, and in addition to other reasons raised on appeal, Appellant should be granted Article 66, UCMJ, relief because he has served eight months of confinement pursuant to his initially-approved sentence, but was subsequently resentenced to just two months of confinement at the rehearing and no clemency was granted; (6) whether trial counsel improperly commented on Appellant's rights under the Constitution[4] and statute by arguing Appellant lacked rehabilitative potential because he would not take accountability for his actions; and (7) whether the military judge abused his discretion in allowing the Government's lone sentencing witness to testify remotely, over Appellant's objection, because the witness decided to attend a non-mission-essential temporary duty on the date of the rehearing.

In addition, Appellant personally raises three issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): (8) whether the military judge abused his discretion in allowing Colonel PA to testify as to Appellant's rehabilitative potential in light of Colonel PA lacking any substantial interactions with Appellant in six years; (9) whether Appellant is entitled to sentence relief pursuant to Article 66, UCMJ, because he was subject to an arbitrary and capricious debarment while on appellate leave; and (10) whether Appellant was denied effective assistance of counsel when, upon learning for the first time in the midst of his rehearing that he could have sought to litigate the denial of his request for a military counsel of his own selection pursuant to Article 38(b)(3)(B), UCMJ, 10 U.S.C. § 838(b)(3)(B), he was forced to make a hasty decision regarding his choice of counsel on the spot. We have carefully considered issues (8) and (10) and determine they are without merit and warrant no discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

After considering Appellant's assignments of error and issues he personally

---

[4] Appellant's assignment of error brief explains, "Trial counsel's improper commentary [in sentencing argument] implicated Appellant's constitutional rights because it served as an attack upon his previous plea of not guilty and right to remain silent. . . ."

raises on appeal, we affirm the findings and sentence as set forth in our de-cree.[5]

# I. BACKGROUND

This court described the facts of the case in our initial decision that found Appellant's three assault consummated by a battery convictions legally and factually sufficient. *Scott*, unpub. op. at \*2–11. It will suffice to state here that the findings of guilty are founded upon an incident in March 2016 after Appel-lant initiated a verbal confrontation in a parking lot outside a nightclub in Tucson, Arizona. At the time, Appellant was riding in the front passenger seat of a friend's car. He began by rolling down a car window and shouting obscen-ities at three women who stood in the way. When the women were unmoved by Appellant's demands, Appellant approached the women, and the driver fol-lowed Appellant to try to convince him to return to the car.

The incident rapidly escalated to a heated exchange of words and physical contact. Appellant struck one woman in the face with his hand, knocking her down. After Appellant hit the same woman a second time, he struck the other women in quick succession. As bystanders approached, Appellant and his friend got back into the car and drove off. The first woman Appellant struck left before police arrived, but the other two provided statements to the police and had their injuries photographed. Each of the women's faces had a reddened mark where she was struck. Almost one month later at the same nightclub, one of the women recognized Appellant as her assailant. After police were con-tacted and responded, Appellant was arrested when he walked out of the club.

At the rehearing, the Prosecution admitted the prior testimony of the three victims and other evidence from Appellant's trial.

# II. DISCUSSION

## A. Challenges to the SJAR

The proper completion of post-trial processing is a question of law the court reviews de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000) (citing *United States v. Powell*, 49 M.J. 460, 462 (C.A.A.F. 1998)). Failure to comment in a timely manner on matters in the SJAR or matters attached to the SJAR "waives in the absence of plain error, or forfeits, any later claim of error."

---

[5] Appellant requested speedy appellate review in his timely opposition to the Govern-ment's 18 March 2021 motion for enlargement of time. This opinion is being issued before the 18-month standard for a presumptively unreasonable delay in appellate re-view set in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). We find no prej-udice to Appellant and relief is not warranted for the time it took to complete review.

*United States v. Zegarrundo*, 77 M.J. 612, 614 (A.F. Ct. Crim. App. 2018) (citing Rule for Courts-Martial (R.C.M.) 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)).

When analyzing for plain error, an appellate court will assess whether "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Scalo*, 60 M.J. at 436 (quoting *Kho*, 54 M.J. at 65). "To meet this burden in the context of a post-trial recommendation error . . . an appellant must make 'some colorable showing of possible prejudice.'" *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65). "The threshold is low, but there must be some colorable showing of possible prejudice. . . . in terms of how the [error] potentially affected an appellant's opportunity for clemency." *Id.* at 437 (citation omitted).

### 1. The Reprimand

Appellant claims error in that the SJAR failed to advise the convening authority that he was empowered to set aside Appellant's reprimand adjudged at the rehearing. Appellant asks this court to set aside the approved sentence and remand for new post-trial processing with a corrected SJAR.

#### a. Additional Background

During post-trial processing, the SJAR correctly advised the convening authority of his power to disapprove, commute or suspend, in whole or in part, the confinement component of the adjudged sentence. The SJAR did not similarly advise the convening authority that he could disapprove the reprimand. Appellant did not address this apparent discrepancy in clemency. At the same time, Appellant did not seek relief that the convening authority had the power to grant under Article 60, UCMJ, 10 U.S.C. § 860.[6] Instead, trial defense counsel asked the convening authority to urge this court to both disapprove the dismissal under Article 66(c), UCMJ, 10 U.S.C. § 866(c), and to recommend that the Secretary of the Air Force (SECAF) substitute an administrative discharge in accordance with Article 74(b), UCMJ, 10 U.S.C. § 874(b). Recognizing the convening authority's limited clemency power under the law, trial defense counsel nonetheless looked to the convening authority to "fully account for each of the six months that [Appellant] spent in confinement for a crime he did not commit." He urged that "[i]n light of the full context of the situation, a dismissal is an unnecessarily severe punishment."

---

[6] The convening authority had the power to disapprove, commute, or suspend, in whole or in part, Appellant's adjudged confinement and reprimand, but not the dismissal. *See* Article 60(c)(4)(A), UCMJ, 10 U.S.C. § 860(c)(4)(A); *see also* R.C.M. 1107(d)(1).

### b. Analysis

Because Appellant did not object to the contents of the SJAR upon receipt of it, we review for plain error. The SJAR must include a "concise recommendation." R.C.M. 1106(d)(3). The Discussion to the rule explains that recommendation "*may* include a summary of clemency actions" that the convening authority has the power to take. *Id.*, Discussion (emphasis added). Thus, it is not plain and obvious error for the SJAR to exclude advice on the convening authority's power to disapprove Appellant's adjudged reprimand. At the same time, and under the particular facts of this case, we find that Appellant has failed to make a colorable showing of possible prejudice even if there was error.[7] Appellant neither sought clemency for the reprimand nor other relief that the convening authority had the power to grant under the UCMJ. Thus, we find the complained-of omission in the SJAR was not shown to be plain error. *See Scalo*, 60 M.J. at 436.

### 2. Incorrect Personal Data Sheet Attached to the SJAR

Appellant also alleges error because the Personal Data Sheet (PDS) that was attached to the SJAR included adverse personnel information. This information was ruled on by the military judge and excluded from the PDS that the Prosecution admitted in its sentencing case. Appellant asks this court to set aside the approved sentence and remand for new post-trial processing with a corrected SJAR.

### a. Additional Background

Appellant had undergone an NJP proceeding under Article 15, UCMJ, 10 U.S.C. § 815, as a cadet at the United States Air Force Academy Preparatory School in 2006. After that proceeding concluded, the record of NJP became part of Appellant's personnel record. During presentencing proceedings at the rehearing, the Prosecution offered evidence of Appellant's service from his personnel records. Included was a PDS that summarized his service and identified "1" record of NJP reflecting the 2006 NJP proceedings. Appellant objected to the PDS because the NJP exceeded the five-year limit prescribed by AFI 51-

---

[7] This court attached to the appellate record a declaration by the convening authority that refutes Appellant's claim that the convening authority's decision may have changed had the SJAR advised him in the manner in which Appellant claims he should have been advised. We gave no weight to this declaration in reaching our decision.

201, ¶ 12.26.2.[8] The military judge sustained the objection and the PDS admitted for sentencing identified "0" NJP actions.

Following the rehearing, the PDS that the staff judge advocate attached to the SJAR identified the "1" NJP action Appellant had objected to at the sentencing hearing and that the military judge had sustained. The PDS also showed Appellant had no prior service before 10 May 2010.[9] At the same time, the PDS noted that Appellant had been recognized with the Air Force Longevity Service Award with two devices, indicating that Appellant had at least 12 years' honorable active or reserve military service with any branch of the United States Armed Forces.[10]

Before advising the convening authority, on 12 March 2020 the SJA served a copy of the SJAR on trial defense counsel, and a copy was served on Appellant as well. The memorandum to trial defense counsel encouraged Appellant's counsel to review the SJAR for error before it was presented to the convening authority:

> The recommendation has not been presented to the convening authority pending an opportunity for you to review it and reply should you desire. Pursuant to Rule for Courts-Martial (R.C.M.) 1106(f) and AFI 51-201, paragraph A11.19[, (18 Jan. 2019)], you are invited to make comments, including corrections or rebuttal, to any matter in the recommendation you believe to be erroneous, inadequate or misleading, within 10 days of receipt of this copy. Failure to comment on any matter in the recommendation or matters attached to the recommendation in a timely manner shall waive later claim of error.

---

[8] R.C.M. 1001(b)(2) limits "[p]ersonal data" and "personnel records" that trial counsel may introduce in sentencing to information as prescribed "[u]nder regulations of the Secretary concerned." In the Air Force, records of NJP under Article 15, UCMJ, 10 U.S.C. § 815, may be admitted if not over five years old on the date the charges were referred. AFI 51-201, ¶ 12.26.2.

[9] The PDS showed, "Initial Date of Current Service: 10 May 2010." It also showed, "Prior Service: None."

[10] The Air Force Longevity Service Award is authorized based on an aggregate of four years of honorable active federal military service with any branch of the U.S. Armed Forces or Reserve components. An oak leaf cluster is worn as an authorized device for each additional four years of creditable service. Air Force Manual 36-2806, *Awards and Memorialization Program*, ¶¶ 3.37.1.3.2, A14.27 (10 Jun. 2019).

The memorandum to Appellant similarly encouraged Appellant to review the SJAR and to make comments, including corrections or rebuttal, to any matter in the recommendation Appellant believed to be erroneous, inadequate or misleading.

Trial defense counsel and Appellant separately receipted for the SJAR on 18 March 2020. No written matters were submitted objecting to the "1" NJP that was identified on the post-sentencing PDS.

### b. Law and Analysis

Appellant claims the Government erred by attaching the erroneous PDS to the SJAR instead of the PDS that was admitted at trial. On appeal, the Government concedes the PDS attached to the SJAR did not comply with paragraph A11.15 of the AFI because it should have been the same as the one admitted at the rehearing.[11] Appellant also claims error in that the Government failed to comply with the provisions of paragraph 13.21 of AFI 51-201 (18 Jan. 2019). That paragraph details procedures for the Government to follow "[i]f the convening authority wishes to consider any matters adverse to the accused that were not admitted at trial." Among those procedures, the SJA is required to notify the accused, in writing, of such matters, that the accused has a right to rebut the matters, and that the convening authority may consider them.

We agree with Appellant that the Government did not comply with paragraph 13.21 of the AFI. Nonetheless, we find such noncompliance does not entitle Appellant to relief under the circumstances here. Because Appellant did not object to the SJAR, we review for plain error. Assuming error that was plain or obvious for purposes of our analysis, Appellant has not made a colorable showing of possible prejudice.

As noted earlier, trial defense counsel's submission to the convening authority urged this court to disapprove the dismissal, and to recommend that the SECAF substitute an administrative discharge in lieu of the adjudged dismissal. It bears repeating that the relief Appellant sought is not among the clemency options available to the convening authority under the UCMJ. *See* Article 60(c)(4)(A), UCMJ, 10 U.S.C. § 860(c)(4)(A); *see also* R.C.M. 1107(d)(1). Similarly challenging to Appellant's burden to establish prejudice, Appellant has not shown that the relief he wanted from the SECAF was likely without a thorough examination of his personnel records, including the record of NJP

---

[11] AFI 51-201, ¶ A11.15 (18 Jan. 2019) ("The SJA or designee ensures copies of the Report of Result of Trial memorandum and the accused's personal data sheet admitted at trial, or at a post-trial hearing (whichever is current), are attached to the SJAR.").

referenced in the PDS. Given the limited options available to the convening authority, Appellant has not made a colorable showing that if the PDS that was attached to the SJAR was the same as the PDS admitted at the rehearing, the convening authority might have taken some action favorable to Appellant that was within his statutory power to grant as clemency.[12]

Accordingly, although the SJAR included an attached PDS that referenced a prior record of NJP, Appellant has not made a colorable showing of possible prejudice warranting remand for new post-trial processing with a corrected SJAR that complies with the AFI.

## B. Article 66(c), UCMJ, Review of the Sentence

In three assignments of error, and in an issue raised pursuant to *Grostefon*,[13] Appellant urges this court to reduce his sentence. Appellant calls upon the court to exercise its statutory responsibility to affirm "the sentence or such part or amount of the sentence, as" this court "finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ.

### 1. Law

"We review sentence appropriateness de novo." *United States v. Datavs*, 70 M.J. 595, 604 (A.F. Ct. Crim. App. 2011) (citing *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005)), *aff'd*, 71 M.J. 420 (C.A.A.F. 2012). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion in determining whether a sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### 2. Analysis

Appellant raises five issues on appeal with respect to this court's Article 66(c), UCMJ, responsibility to review sentence appropriateness. First, Appel-

---

[12] This court attached to the appellate record a declaration by the convening authority stating that "[g]iven the severity of [Appellant's] misconduct for which he was convicted, the information regarding prior nonjudicial punishment contained within the personal data sheet did not influence my clemency determination." We gave no weight to this declaration in reaching our decision.

[13] We address assignments of error (3), (4), and (5), in addition to issue (9) raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

lant asks that we set aside the reprimand as excessive. Second, Appellant argues he is entitled to relief in the nature of setting aside the dismissal because, while confined, he was a victim of a financial crime committed by an active duty security forces guard. Third, Appellant asks us to set aside the dismissal because he served eight months of confinement under his original sentence, but was subsequently sentenced to two months of confinement at the rehearing. Fourth, Appellant asks us to set aside the dismissal because he was debarred from Davis-Monthan Air Force Base (AFB) following release from confinement. At the same time, Appellant asks that we consider the debarment "in conjunction with all other wrongs he has suffered that are identified in [ ] his brief (e.g., excessive confinement without remedy, [and] the larceny committed by a confinement guard) in fashioning appropriate relief" from the sentence adjudged at the rehearing. Accordingly, we consider as a fifth issue whether Appellant's sentence is inappropriately severe giving individualized consideration to Appellant, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial, to include all the matters Appellant raises on appeal.

We consider each issue in turn.

### a. Reprimand Adjudged at the Rehearing

After the sentencing rehearing, the convening authority approved the adjudged reprimand, which he stated as follows in the action:

> You are hereby reprimanded! As an officer in the United States Air Force, you are expected to maintain high standards of integrity, responsibility, and leadership. Your actions, which include assaulting three female civilians, are despicable. Your acts displayed a momentous departure from the Air Force Core Values. I am extremely disappointed with your inexcusable conduct, which has brought discredit and disgrace upon you, your unit, and the United States Air Force.

Appellant does not take issue with this language, but argues a reprimand is too severe of a penalty given that he was not originally sentenced to a reprimand and had already served the eight-month term of confinement at the time of the rehearing. We find no merit to Appellant's claims that we should exercise our Article 66(c), UCMJ, authority and find the reprimand is excessive on grounds that it is a more severe penalty than what he originally received.[14]

---

[14] At the same time, Appellant argues his sentence violates Article 63, UCMJ, 10 U.S.C. § 863, because his original sentence did not include a reprimand. We disagree.

We also find the reprimand is not an inappropriately severe penalty, and it would be the unusual case in which we would so find. Reprimands are among the sentencing penalties that are "qualitatively different from other punishments." *United States v. Josey*, 58 M.J. 105, 108 (C.A.A.F. 2003). Unlike traditional criminal punishment such as confinement, reprimands "affect military personnel administration," *id.* at 106–07, and "have no direct monetary consequences." *Id.* at 108. We decline to exercise our Article 66(c), UCMJ, authority to grant relief on the basis that the reprimand is an inappropriately severe penalty.

### b. Theft of Appellant's Money

Appellant unsuccessfully sought relief from the convening authority after an active duty security forces guard stole $2,100.00 that belonged to Appellant when Appellant was confined. The Addendum to the SJAR confirms "[t]his report is true, the guard's conduct was criminal, and administrative action was taken against the guard. The security forces member was subsequently discharged from the Air Force." In a declaration attached to the appellate record, Appellant explains he had given permission to the guard to use Appellant's debit card to purchase toiletries for Appellant. The guard subsequently used it to make cash withdrawals from Appellant's bank account. In its answer to this assignment of error, the Government notes that Appellant does not claim he was permanently deprived of the money, and Appellant does not contest this point in his reply brief.

On appeal, and citing *United States v. Kelly*, Appellant urges this court to set aside the dismissal on grounds that he was a financial crime victim. 77 M.J. 404, 406 (C.A.A.F. 2018) (describing Courts of Criminal Appeals "as having a '*carte blanche* to do justice'" (quoting *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991))). Appellant explains the fact that the prison guard had a culpable state of mind weighs in favor of granting Article 66, UCMJ, relief. Additionally, Appellant describes his own anxiety and depression that was exacerbated by the guard's conduct.

A Court of Criminal Appeals (CCA) is "empowered to grant sentence relief based on post-trial confinement conditions." *United States v. Guinn*, 81 M.J. 195, 200 (C.A.A.F. 2021). Our authority arises when we find "a legal deficiency

Article 63, UCMJ, states that upon a sentencing rehearing "no sentence in excess of or more severe than the original sentence may be approved . . . ." *See also* R.C.M. 810(d)(1). Objectively, Appellant's dismissal, two months of confinement, and a reprimand is less severe than a sentence of a dismissal, eight months of confinement, and no reprimand. *See United States v. Altier*, 71 M.J. 427, 428–29 (C.A.A.F. 2012) (per curiam) (finding a sentence containing types of punishment that could be imposed under Article 15, UCMJ, is neither excessive nor more severe under Article 63, UCMJ).

in the post-trial process." *United States v. Gay*, 75 M.J. 264, 268 (C.A.A.F. 2015). That is, the genesis for relief must be "sparked by a legal error." *Id*. One such legal error is when an appellant demonstrates his treatment in confinement is unlawful, and, thus, no longer appropriate. *Guinn*, 81 M.J. at 200–01. Under these circumstances, a CCA "not only has the authority but also *the duty* to ensure that the severity of an adjudged and approved sentence has not been *unlawfully increased by prison officials*." *Id*. at 200.

Even if we were to agree with Appellant that there was a legal deficiency in the implementation of his punishment, we disagree that setting aside the dismissal or granting other relief is an appropriate remedy. To be sure, Appellant was a member of a vulnerable population of prison inmates and the victim of a confinement guard who took advantage of him. However, we determine Appellant's convictions warrant a sentence that includes the approved confinement, dismissal, and a reprimand even when we factor into our review of the record that Appellant was the victim of a financial crime perpetrated by a guard. We decline to exercise our sentence appropriateness authority by setting aside Appellant's sentence in whole or in part.

### c. Uncredited Confinement

At the rehearing held in January 2020, Appellant was sentenced to six months less confinement than was originally adjudged and approved by the convening authority in 2017. Characterizing these six months he was confined as an injustice because it was not applied against the dismissal, Appellant requests we set aside the dismissal using this court's Article 66(c), UCMJ, authority. Appellant allows he "may not be entitled to have the excessive six months he spent in confinement credited against his dismissal as a matter of law." Even so, he argues the six months he spent in confinement for a legally erroneous conviction—along with the other issues he raises on appeal—warrant relief. Appellant asks this court to base its authority to grant the requested relief on a CCA's Article 66(c), UCMJ, responsibility "to affirm only so much of Appellant's sentence that it deems to be correct in law *and fact*" and that it determines "should be approved."

The Government answers with the contention that this court may grant sentence appropriateness relief only if we find a legal deficiency in the findings and sentence as approved by the convening authority. For support, the Government cites *Gay*, 75 M.J. 264 (C.A.A.F. 2015), discussed *supra*, a case in which the United States Court of Appeals for the Armed Forces (CAAF) predicated a CCA's exercise of its sentence appropriateness authority on finding "a legal deficiency in the post-trial process." *Id*. at 269. In reply, Appellant characterizes the additional six months he was confined as both "excessive" and the product of legal error. Appellant explains the genesis for relief is this court finding the fraternization conviction legally insufficient, which resulted in six

fewer months of confinement adjudged at the rehearing. In asking us to apply our sentence appropriateness authority, Appellant urges us to determine if Appellant's sentence is "appropriate as a matter of fact."

As an initial matter, and citing *Josey*, Appellant observes his sentence may be correct in law because he is not legally entitled to have his previous sentence of served confinement applied against the dismissal. 58 M.J. at 108 ("R.C.M. 305(k) provide[s] an appropriate measure for crediting various types of punishment for purposes of former jeopardy, including confinement, hard labor without confinement, restriction, forfeitures, and fines."). On this point, we agree with Appellant. "[R]eprimands, reductions in rank, and punitive separations are so qualitatively different from other punishments that conversion [for confinement served as a result of the initial proceedings] is not required as a matter of law." *Id.*; *see also United States v. Rosendahl*, 53 M.J. 344, 347–48 (C.A.A.F. 2000).

However, we assume for purposes of this appeal only that the scope of this court's "highly discretionary power," *United States v. Lacy*, 50 M.J. 286, 287–88 (C.A.A.F. 1999), might reach the six months Appellant was confined that was not credited against his dismissal, and thereby allow this court to set aside the dismissal. We make this assumption because the points of law addressed by the CAAF's decisions in *Josey* and *Rosendahl* do not directly address a CCA's Article 66(c), UCMJ, authority with respect to uncredited confinement after a conviction is found legally insufficient.

Nonetheless, we decline to set aside the dismissal or grant other relief here even if Article 66(c), UCMJ, would empower us to do so. We find persuasive the CAAF's reasoning in *Josey* that "[t]he issue of whether a member of the armed forces should or should not receive a punitive discharge reflects a highly individualized judgment as to the nature of the offense as well as the person's past record and future potential . . . ." 58 M.J. at 108. In the exercise of this court's Article 66(c) responsibility to review the approved sentence, our determination whether the dismissal is appropriate is made "in light of the character of the offender, the nature and seriousness of his offenses, and the entire record of trial." *Datavs*, 70 M.J. at 604–05 (citing *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982)). Considering the entire record, including the six months of confinement that was not applied against another component of the sentence as a matter of law, we find the sentence approved after the rehearing is warranted by the evidence and is not an inappropriately severe penalty.

### d. Debarment from Davis-Monthan AFB

After the rehearing, Appellant unsuccessfully sought relief from the convening authority, complaining that "after being released from wrongful con-

finement, [he] faced an arbitrary and capricious 5-year debarment[15] from Davis-Monthan [AFB], which served no purpose other than to perpetuate an already illegal punishment." Appellant requests that we exercise our authority to set aside the dismissal pursuant to Article 66(c), UCMJ, to redress that debarment.

A CCA has considerable discretion when carrying out its Article 66(c), UCMJ, responsibility to review the appropriateness of a sentence. However, that discretion is not unlimited. This court has jurisdiction to "act only with respect to the findings and sentence as approved by the convening authority." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We find the complained-of debarment is outside our authority to review, as explained next.

In determining the scope of this court's statutory responsibility, we find *Clinton v. Goldsmith*, 526 U.S. 529, 533 (1999), instructive. In that case, the respondent sought relief under the All Writs Act[16] after the Air Force notified the respondent of its intent to drop him from the rolls. *Id.* at 531. That notice was founded on a statute that authorized such action for any officer who had served at least six months confinement under a court-martial sentence. *Id.* at 532. After the CAAF enjoined the President and other Executive Branch officials from taking action, the Supreme Court reversed. *Id.* at 532–33. The Court reasoned that "action to drop respondent from the rolls was an executive action, [and was] not a 'finding' or 'sentence.'" *Id.* at 535 (citing 10 U.S.C. § 867(c)). Thus, that action was "outside of the CAAF's express statutory jurisdiction" to review. *Id.* at 540. In reaching this result, the Court rejected the claim that the CAAF had "merely preserved" the petitioner's court-martial sentence "by precluding additional punishment." *Id.* at 536. Concluding the action was beyond the CAAF's jurisdiction to review, the Court made no distinction between the CAAF's "narrowly circumscribed," though "independent[,] statutory jurisdiction" to "review the record," *id.* at 535 (citing 10 U.S.C. §§ 867(a)(2), (3)), on the one hand, and a CCA's "jurisdiction to 'review court-martial cases,'" *id.* (citing 10 U.S.C. § 866(a)), on the other.

In *United States v. Buford*, this court similarly observed that Article 66(c), UCMJ, does not extend a CCA's reach to all matters "that may have some link to a court-martial sentence." 77 M.J. 562, 565 (A.F. Ct. Crim. App. 2017). We further explained that Article 66(c), UCMJ, does not confer unlimited author-

---

[15] *See* 32 C.F.R. § 809a.5 (2018) ("Under the authority of 50 U.S.C. [§] 797, installation commanders may deny access to the installation through the use of a barment order.").

[16] 28 U.S.C. § 1651(a).

ity to "grant relief for an administrative matter unrelated to any legal deficiency and unconnected to the legality or appropriateness of a court-martial sentence."

In the case under review, the debarment is analogous to the action of Air Force officials in *Goldsmith* who notified the respondent of their intent to drop him from the rolls. Both actions were founded in a statute and predicated on the results of a court-martial conviction. Appellant has not established the debarment was anything more than an administrative action or presented evidence that military officials directed the debarment in order to increase the severity of his sentence and thereby impose illegal post-trial punishment. We find Appellant's debarment is beyond this court's statutory jurisdiction to review.

### e. Sentence Severity

After considering all the matters Appellant has raised on appeal, and recognizing the attendant consequences of a dismissal,[17] we determine the sentence adjudged at the rehearing is appropriate. We reach this determination after giving individualized consideration to Appellant, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(c), UCMJ, we affirm the sentence approved by the convening authority after the rehearing.

## C. Appellant's Rebuttal to his Officer Performance Report

On appeal, Appellant claims trial counsel improperly commented on Appellant's rights by arguing that Appellant lacked rehabilitative potential because he would not take accountability for his actions. Appellant requests that we set aside the sentence. We find no error to correct on appeal considering that Appellant waived a claim of error in the admissibility of the evidence that trial counsel relied on in argument.

---

[17] "A dismissal is a punitive discharge . . . [that will] affect[ ] the accused's future with regard to legal rights, economic opportunities, and social acceptability and will deny the accused other advantages which are enjoyed by one whose discharge indicates that he has served honorably." *United States v. Boyd*, 55 M.J. 217, 219 (C.A.A.F. 2001) (quoting military judge's sentencing instructions on the impact of a dismissal).

### 1. Additional Background

Appellant's duty performance and other matters that described and characterized his military service were documented in his officer performance reports (OPR). At the rehearing, the Prosecution offered Appellant's OPRs from his personnel record as Prosecution Exhibit 21.[18] Among the OPRs was a post-conviction OPR from 2017 that was required to be referred because Appellant had been convicted at trial by court-martial.[19] Included in the exhibit was Appellant's written rebuttal comments to the referral OPR,[20] which trial counsel would later reference in the Prosecution's sentencing argument. In that rebuttal, Appellant stated,

> Even though I have been convicted of the charges I am innocent of all of them. I will be submitting my case through the Air Force Court of Criminal Appeals (AFCCA) in hopes of all my charges being dropped and I will be allowed to re-enter the military and complete my career.

At trial, the Defense raised no objection to Prosecution Exhibit 21. After trial counsel individually offered the exhibit and four others, the military judge identified all five exhibits as a group and asked trial defense counsel if he had "any objection." Trial defense counsel objected to three exhibits, but not the OPRs. The military judge acknowledged the objections, and then asked the Defense, "And you do not have an objection to Prosecution Exhibit 21, which are the officer performance reports of [Appellant]?" Trial defense counsel replied, "Correct, sir." Even so, and after the military judge "note[d] that there is no defense objection to Prosecution Exhibit 21," the military judge asked counsel for both parties to assure him that no OPRs were missing from the exhibit. Trial defense counsel explained Appellant had received training reports but no OPRs during the period when the military judge thought at least one more OPR may have been accomplished for Appellant. Apparently satisfied with this answer, the military judge asked one last time, "And again, Defense Counsel,

---

[18] *See* R.C.M. 1001(b)(2) ("Under regulations of the Secretary concerned, trial counsel may obtain and introduce from the personnel records of the accused evidence of . . . character of prior service. Such evidence includes copies of reports reflecting the past military efficiency, conduct, performance, and history of the accused and evidence of any disciplinary actions . . . .").

[19] *See* AFI 36-2406, *Officer and Enlisted Evaluation Systems*, ¶ 1.10.3.1 (8 Nov. 2016) ("conviction by courts-martial" must result in a referral OPR).

[20] Rebuttal comments are attached to the referral OPR and become a matter of record. AFI 36-2406, ¶¶ 1.4.3, 1.4.4, 1.10.5.2 (8 Nov. 2016).

any objection to Prosecution Exhibit 21 for identification, which are the officer performance reports?" Trial defense counsel answered, "No, Your Honor."

During sentencing argument, trial counsel related Appellant's rehabilitative potential to the rebuttal comments he provided to the referral OPR. Trial counsel began by recounting the testimony that was given by one of Appellant's former squadron commanders who described Appellant's rehabilitative potential as "mediocre at best." Trial counsel then addressed Appellant's rebuttal comments, arguing to the military judge,

> And, sir, you also received [Appellant]'s officer performance reports. And in those performance reports, his last one that he received after being convicted at the general court-martial, he provided a response. And in that response he said he was innocent of everything. So let's consider what the first step in rehabilitative potential is, and that's taking accountability for your actions.

The Defense did not object to trial counsel's argument. When trial defense counsel delivered Appellant's sentencing argument, he expressed doubt that Appellant's OPR "should be used against him . . . [b]ecause the fact is that he was wrongfully convicted, and that's why we are here."

### 2. Law

Ordinarily, a military judge's admission of evidence is reviewed for an abuse of discretion. *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018) (citation omitted). However, claims of error with respect to the admission of evidence are preserved only if a party timely objects to the evidence and states a specific ground for the objection. Mil. R. Evid. 103(a)(1). When an appellant fails to make a timely objection to the admission of evidence at trial, that error is forfeited in the absence of plain error. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (*citing United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007)) (additional citations omitted). In contrast, under the ordinary rules of waiver, when an appellant affirmatively states he has no objection to the admission of evidence, the issue is waived and his right to complain about its admission on appeal is waived. *United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017) (*citing United States v. Campos*, 67 M.J. 330, 332–33 (C.A.A.F. 2009)) (additional citation omitted).

In accordance with Article 66(c), UCMJ, a CCA has the unique statutory responsibility to affirm only such findings of guilty and so much of the sentence that is correct and "should be approved." Thus, this court retains the authority to address errors raised for the first time on appeal despite waiver of those errors at trial that would preclude further review on appeal. *See, e.g., United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018).

Whether argument is improper is a question of law that this court reviews de novo. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018) (citation omitted). When trial defense counsel fails to object, an appellant forfeits the objection on appeal, and we review for plain error. R.C.M. 1001(g); *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007). Appellant must show (1) error; (2) that was plain or obvious; and (3) the error materially prejudiced a substantial right. *Erickson*, 65 M.J. at 223 (citations omitted).

### 3. Analysis

As an initial matter, Appellant waived any error with respect to the admission of his rebuttal comments to the referral OPR that was admitted as Prosecution Exhibit 21. Appellant was aware of this evidence in advance of trial, as the rebuttal comments bear his signature. When offered into evidence during sentencing, trial defense counsel unequivocally stated he had no objection.

Not only did trial defense counsel acquiesce to the admission of Appellant's written rebuttal comments that were in response to his OPR, there was no objection to trial counsel's sentencing argument that referenced those comments. There is no error, much less clear and obvious error, for trial counsel to argue evidence that is admitted without objection. Once Appellant's OPRs were admitted in evidence, trial counsel was permitted to argue the evidence adduced, as well as any "fair inferences as may be drawn therefrom." *United States v. White*, 36 M.J. 306, 308 (C.M.A. 1993) (citation omitted). This included arguments drawn from Appellant's rebuttal comments in which he advanced his unreserved innocence of all charges and specifications.

We have considered whether we should grant relief under our Article 66(c), UCMJ, authority in spite of this waiver, and decline to do so. We perceive no unfair prejudice to Appellant by the admission of the rebuttal comments he made to the referral OPR. More to the point, we find no reason to pierce waiver on grounds that trial counsel relied on evidence that was before the factfinder in arguing for the sentence that should be adjudged.

### D. Remote Live Testimony of Colonel PA

Before the rehearing and on appeal, Appellant objected to the military judge allowing the Prosecution's sole sentencing witness to testify by answering questions posed to him though live remote video. Appellant asks this court to set aside his sentence. We find the military judge did not err.

### 1. Additional Background

Well in advance of the rehearing, the Prosecution notified the Defense that it planned to call Colonel PA to give his opinion of Appellant's rehabilitative potential. At the time of the rehearing, Colonel PA was assigned to Davis-Monthan AFB where the rehearing was held. However, during the time that the

rehearing was scheduled to convene, Colonel PA had scheduled permissive temporary duty (PTDY) to attend an executive Transition Assistance Program (TAP) at an installation in San Antonio, Texas, in preparation for retirement. In lieu of in-person testimony, the Prosecution notified the Defense that it would present Colonel PA's live testimony by remote means.

The Defense objected, explaining that the Prosecution sought remote testimony "not for any sort of military necessity, but purely due to the convenience of both the witness and the [G]overnment." The Defense argued Colonel PA's PTDY was not a military necessity because he had "chosen to drive" to the elective program, which interfered with his availability to testify in person. Trial defense counsel articulated that "[t]he [G]overnment has known about the date of this [rehearing] since approximately October 2019" and Colonel PA's decision to drive to a TAP course at a different base did not amount to "extenuating circumstances that justify anything other than in[-]person testimony for him."

### 2. Ruling

Ruling from the bench, the military judge applied the criteria for production of a sentencing witness in R.C.M. 1001(e). Finding Colonel PA's testimony, as proffered, was "certainly significant," the military judge found this factor did not "weigh[ ] heavily in favor of personal appearance." In this regard, the military judge concluded the testimony "is not anticipated to resolve any alleged inaccuracy or dispute as to a material fact." Next, the military judge observed,

> the weight or credibility of a witness, in this case, Colonel [PA], will likely be of significance, but the court is not convinced that testimony by video teleconference is such that it would render the court unable to appropriately weigh the credibility of testimony. . . . or give the testimony it's [sic] appropriate weight.

The military judge found the timing of the request for production of the witness weighed in favor of the Defense, as there was an objection timely made before Colonel PA traveled. The military judge also found the cost of producing Colonel PA was minimal if he were present at the base, but having the witness returned or having the witness prevented from attending the PTDY would be significant. The military judge weighed these considerations and overruled the objection, concluding that Colonel PA's testimony delivered though live remote video did not violate Appellant's due process rights.

After Colonel PA testified, the military judge reaffirmed his ruling,

> finding that the balancing test found in [R.C.M.] 1001(e), as well as that articulated in *United States v. McDonald*, [55 M.J. 173

(C.A.A.F. 2001),] that the significance of the personal appearance of the witness to the determination of an appropriate sentence, when balanced against the practical difficulties of producing the witness, does not favor the live production of the witness. And furthermore, the VTC [video teleconferencing] testimony of the witness satisfies the reliability standards required by due process.

### 3. Law

We review a military judge's denial of a request to produce a presentencing witness for an abuse of discretion. *United States v. Briscoe*, 56 M.J. 903, 906 (A.F. Ct. Crim. App. 2002) (citing *United States v. Combs*, 20 M.J. 441, 443 (C.M.A. 1985); *United States v. Tangpuz*, 5 M.J. 426, 429 (C.M.A. 1978)). In *Combs*, the United States Court of Military Appeals listed the following non-exhaustive factors to be considered by the military judge:

> [W]hether the testimony relates to disputed matter; whether the Government is willing to stipulate to the testimony as fact; whether there is other live testimony available to appellant on the same subject; whether the testimony is cumulative of other evidence; whether there are practical difficulties in producing the witness; whether the credibility of the witness is significant; whether the request is timely; and whether another form of presenting the evidence (i.e., former testimony or deposition) is available and sufficient.

20 M.J. at 442–43 (citing R.C.M. 1001(e)(2) in the *Manual for Courts-Martial, United States* (1969 ed.)).

Although the Sixth Amendment[21] right of confrontation does not apply to sentencing proceedings in a non-capital court-martial, *United States v. McDonald*, 55 M.J. 173, 174 (C.A.A.F. 2001), fundamental due process under the Fifth Amendment[22] "requires that the evidence introduced in sentencing meet minimum standards of reliability." *Id.* at 177.

"During the presentence proceedings, there shall be much greater latitude than on the merits to receive information by means other than testimony presented through the personal appearance of witnesses." R.C.M. 1001(e)(1).

---

[21] U.S. CONST. amend. VI.

[22] U.S. CONST. amend. V.

**4. Analysis**

The military judge acted within his discretion when he denied the defense request to produce Colonel PA. Central to this finding is the military judge's balancing of factors to reach the conclusion that live remote video testimony met minimum standards of due process and reliability. We decline to disturb the military judge's finding that the significance of Colonel PA's personal appearance to the determination of an appropriate sentence, when balanced against the practical difficulties of producing him, did not favor a personal appearance.

## III. CONCLUSION

The findings of guilty to Specifications 1, 2, and 3 of Charge I and Charge I, and the sentence adjudged at the rehearing and approved by the convening authority, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

MEGINLEY, Judge (concurring):

I join the opinion of the court. However, I write separately to specifically address dismissal of an officer. The instruction in pre-sentencing at Appellant's first court-martial that was given by the military judge to the members is that "a sentence to a dismissal of a commissioned officer is, in general, the equivalent of a dishonorable discharge of a noncommissioned officer or an enlisted Airman." This appears to be a standard instruction given to members in an officer sentencing case.

Our superior court has acknowledged there is "practically no real difference between calling a sentence providing for separation under conditions of dishonor a dismissal, or describing it as a dishonorable discharge." *United States v. Briscoe*, 33 C.M.R. 42, 44 (C.M.A. 1963); *see also United States v. Bell*, 24 C.M.R. 3, 4 (C.M.A. 1957). Yet, given these particular set of facts, and based on my review of the record, if Appellant was not a commissioned officer, that is, if he were an enlisted Airman, these probably would not have been "dishonorable discharge" worthy offenses. However, an officer's conviction worthy of an adjudged "dismissal" should not be considered the equivalent of a dishonorable discharge, or even compared to a bad-conduct discharge; officer misconduct stands on its own.

In *United States v. Free*, the United States Navy Board of Review stated,

> It is not at all difficult for the reasonably prudent officer to discriminate between what circumstances justify a particular act and what render the act so curtailing of the dignity required by an officer's obligations as to make it an offense against good order and discipline. . . . [B]ut the nature of an officer's commission demonstrates that he has been selected from among the populace as a whole to hold a position of trust and honor and has been trained to exercise the nice discrimination required. It is likewise true that a degree of judgment is required of an officer which is not required of the enlisted member of the service or of a civilian. It follows that a different standard of conduct is required in law of an officer than is required of others. This, in effect, puts him in a different legal status than the enlisted man or the civilian.

14 C.M.R. 466, 471 (N.B.R. 1953). Further, in *United States v. Means*, the United States Court of Military Appeals stated,

> [T]he President has recognized the unique position of officers for purposes of military justice. . . . In short, the Armed Services comprise a hierarchical society, which is based on military rank. Within that society commissioned officers have for many purposes been set apart from other groups. Since officers have special privileges and hold special positions of honor, it is not unreasonable that they be held to a high standard of accountability.

10 M.J. 162, 165–66 (C.M.A. 1981); *see also United States v. Bailey,* No. ACM 37746, 2013 CCA LEXIS 241, at *5 (A.F. Ct. Crim. App. 19 Mar. 2013) (unpub. op.) (per curiam) (holding that "officers may be subjected to more stringent punishments for their violations of the UCMJ than might be appropriate for an enlisted member under the same circumstances" (citing *United States v. Moultak*, 24 M.J. 316, 318 (C.M.A. 1987))); *United States v. Tedder*, 18 M.J. 777, 781 (N.M.C.M.R. 1984) (per curiam) (stating "commissioned officers enjoy a unique, 'special position of trust and duty'" that allow them to be held to higher standards than others not similarly situated (quoting *Means*, 10 M.J. at 165)), *aff'd*, 24 M.J. 176 (C.M.A. 1987).

I am convinced that Appellant's sentence is legally correct. However, based on the language cited in *Free*, *Means*, and *Moultak*, a dismissal should not be viewed in the same manner as a dishonorable discharge, and trial judges should reconsider whether to charge members as such in their sentencing instructions. Appellant is an officer, and as such, the reality is that the cases cited indicate there is a lower threshold for tolerance for misconduct, and conversely, a much higher standard of accountability. Because of this, Appellant's

misconduct is viewed with more scrutiny. The caselaw cited may be dated, but the expectations for officers remain the same. Appellant was not a brand new officer, straight out of officer training school; he was a captain. He was a graduate of a military school (The Citadel), where I have little doubt he was taught about leadership, officership, and character. He was a much bigger human being than his victims; he stood 6'4" and was a football player at his university. Even though he may have been provoked or induced to react the way he did, the testimony clearly indicates that Appellant placed himself in a situation where he could have, and should have, walked away, and had several opportunities to withdraw from the situation. Instead, he assaulted three women, each in fairly rapid succession. Although a dismissal is a severe punishment in this case, prosecuted under the UCMJ, it is not *inappropriate* for the offenses committed.

FOR THE COURT

Carol K. Joyce

CAROL K. JOYCE
Clerk of the Court